ASPEX EYEWEAR, INC., Manhattan Design Studio, Inc., Contour Optik, Inc., Chic Optik, Inc., and Asahi Optical Co., Ltd. (now known as Pentax Corporation), Plaintiffs–Appellants,

v.

CONCEPTS IN OPTICS, INC., Defendant–Appellee.

No. 03–1638.

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 12, 2004.

Michael A. Nicodema, Barry J. Schindler, Greenberg Traurig, New York, NY, for Plaintiff–Appellant.

Gary E. Lambert, Lambert & Associates, Boston, MA, Jack Josephs, Miami, FL, for Defendant–Appellee.

Before MICHEL, SCHALL, and DYK, Circuit Judges.

DYK, Circuit Judge.

Aspex Eyewear, Inc., Manhattan Design Studio, Inc., Contour Optik, Inc., Chic Optik, Inc., and the Pentax Corporation (formerly known as Asahi Optical Co., Ltd.) (collectively "Aspex") appeal the decision of the United States District Court for the Southern District of Florida granting summary judgment of invalidity of U.S. Patent No. RE 37,545 E (the " '545 patent") under 35 U.S.C. § 102(a) and (b). *Aspex Eyewear, Inc. v. Concepts in Optics, Inc.,* No. 00–7067–CIV–MORENO/DUBÉ (S.D.Fla. Aug. 12, 2003). We *vacate and remand.*

## BACKGROUND

Appellant Aspex is the assignee of the '545 patent, which is directed to a magnetically attachable auxiliary lens for eyeglasses. The '545 patent is a reissue of U.S. Patent No. 5,568,207 (the " '207 patent") filed on November 7, 1995. Figure 6 of the '545 patent, depicting auxiliary spectacle frame 20, is reproduced below:

FIG.6

As shown in this embodiment, the auxiliary spectacle frame 20 is attached to the primary spectacle frame 10 by two pairs of overlapping magnets 22.

On June 28, 2000, Aspex sued Concepts in Optics, Inc. ("Concepts") in the Southern District of Florida alleging infringement of the '207 patent.[1] Following reissue, the complaint was amended to assert infringement of only claims 1 and 17 of the '545 patent. Claims 1 and 17 state:

1. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including two side portions each having an extension extended therefrom for pivotally coupling a leg means thereto, said primary spectacle frame including two rear and side portions each having a projection secured thereto, said primary spectacle frame including an upper side portion,

a pair of first magnetic members secured in said projections respectively,

an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxil-

---

1. By consent, the district court later referred all further proceedings and the entry of final judgment to a magistrate judge under 28 U.S.C. § 636(c).

iary spectacle frame including two side portions each having an arm extended therefrom for extending over and for engaging with said upper side portion of said primary spectacle frame, and

a pair of second magnetic members secured to said arms respectively for engaging with said first magnetic members of said primary spectacle frame so as to secure said auxiliary spectacle frame to said primary spectacle frame,

said arms being engaged with and supported on said upper side portion of said primary spectacle frame so as to allow said auxiliary spectacle frame to be stably supported on said primary spectacle frame and so as to prevent said auxiliary spectacle frame from moving downward relative to said primary spectacle frame and so as to prevent said auxiliary spectacle frame from being disengaged from said primary spectacle frame.

17. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions extending laterally away from one another and rearwardly of said frame, each of said extensions having a top side, a front side and a rear side with a first magnetic member secured to said rear side, and

an auxiliary spectacle frame including two side portions each having an arm extending from said front side over said top side, said arms containing corresponding second magnetic members, said arms and said first and second magnetic members supporting said auxiliary spectacle frame on said primary spectacle frame.

'545 patent, col. 3, ll.35–63, col. 5, ll.41–53.

On April 8, 2003, Concepts moved for summary judgment of invalidity under, *inter alia*, 35 U.S.C. § 102. Concepts argued that claims 1 and 17 were invalid under both § 102(a) and (b) because another inventor, Julie Madison, had invented the claimed eyeglasses in 1994, prior to the critical date. Madison later applied for and was issued United States Patent No. 6,149,269 (the " '269 patent") for her eyeglass invention. However, it was the disclosure of Madison's invention to others in 1994, as opposed to the '269 patent, that Concepts relied on as prior art. In support of its argument, Concepts offered Madison's testimony, drawings allegedly prepared by Madison in 1994, and the testimony of Kaoru Kimura, Takahiro Nishioka and Lynne Smith, to whom Madison allegedly disclosed the invention prior to the critical date for the '545 patent. Concepts urged that summary judgment was appropriate on a variety of grounds. In particular, Concepts argued that all elements of the claimed invention were: (1) known by others prior to the critical date (§ 102(a)); (2) described in a printed publication prior to the critical date (§ 102(a)); and (3) described in a printed publication more than one year prior to the filing date (§ 102(b)).[2] Aspex did not file a cross-motion for summary judgment that claims 1 and 17 were not invalid in light of the Madison invention.

---

2. Concepts also urged that the '545 patent was invalid under 35 U.S.C. §§ 102(b) (the on-sale bar); 102(f); 103; and 112 because it failed to meet the enablement, written description, and best mode requirements. In addition, Concepts argued that Aspex had added new matter during the reissue proceedings; that the '545 patent was unenforceable because of inequitable conduct; and that judicial estoppel barred Aspex from contending that the '545 patent was not invalid. These additional arguments were rejected by the district court and are not before us on appeal.

In an opinion dated August 12, 2003, the court agreed with Concepts as to these three grounds for invalidity under § 102. First, the court held that Madison had publicly disclosed her invention prior to the critical date of the '545 patent. It relied on the testimony of Kimura, Nishioka and Smith, each of whom stated that he or she had met with Madison and had seen drawings of her eyeglass invention in 1994. The court noted that both Madison and Smith had testified that there was an oral understanding of confidentiality at these meetings, and that Smith had stated "that the drawings kept in a notebook by Madison were the most confidential." *Aspex*, slip op. at 12–13. But apparently because there were no formal written confidentiality agreements, the court held "that the meetings [with Kimura, Nishioka and Smith we]re sufficient to meet the disclosure requirement of Section 102(a) and that Aspex ha[d] failed to raise a genuine issue of material fact which would preclude this finding." *Id.* at 13.

The district court next addressed the question of whether each limitation of claims 1 and 17 had been disclosed prior to the critical date. Concepts submitted Exhibit P, "a chart comparing the Madison invention to Claims 1 and 17," which referred to various drawings contained in Exhibits F and G ("the Madison drawings") taken from Madison's notebook and allegedly created prior to the critical date. *Id.* at 13–14. Aspex relied on the affidavit of its expert, David Chao, who testified that these drawings did not disclose every element of the claims and were not enabling.

The district court rejected Aspex's arguments. The court found that the Madison drawings contained in Exhibits F and G had been publicly disclosed. It further held that the "drawings presented by Concepts contain[ed] all of the elements of claims 1 and 17 and that Aspex ha[d] failed to raise a material issue of fact as to this issue."[3] *Id.* at 15. For these reasons, the district court found that claims 1 and 17 were invalid under the "known ... by others" provision of section 102(a).[4] *Id.* at 15. The court further held that the Madison drawings contained in Exhibits F and G constituted a "printed publication" that rendered claims 1 and 17 invalid under § 102(a) and (b). *Id.* at 16, 19. The district court did not reach the issue of infringement, and denied summary judgment on other grounds for invalidity asserted by Concepts.

The district court subsequently denied Aspex's motion for reconsideration. *Aspex Eyewear, Inc. v. Concept in Optics, Inc.*, No. 00–7067–CIV–MORENO/DUBÉ (S.D.Fla. Sept. 8, 2003). The court entered a Rule 54(b) judgment of invalidity on September 10, 2003. *Aspex Eyewear, Inc. v. Concept in Optics, Inc.*, No. 00–7067–CIV–MORENO/DUBÉ (S.D.Fla. Sept. 10, 2003). Aspex timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).[5]

3. The district court did not, as Aspex argues, rely on Exhibit P as prior art. Rather, the court relied on the "drawings" contained in Exhibits F and G. *Aspex,* slip op. at 15. Exhibit P contains no drawings.

4. Before the decision in this case, two other district courts had rejected arguments that the '207 patent was invalid in light of Madison's alleged prior invention. *See Aspex Eyewear, Inc.v. E'Lite Optik, Inc.,* No. 3:98–CV–

2996–D, 2002 WL 1751381 (N.D.Tex. April 4, 2002) (*"E'Lite"*); *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.,* No. 99–1623–LGB (C.D. Cal. June 5, 2001) (*"Revolution"*). There is property no argument that Concepts was collaterally estopped by these prior decisions.

5. Despite the appellee's arguments to the contrary, we decline to consider the validity of claims other than 1 and 17, which were the only claims addressed in the motion for sum-

## DISCUSSION

The party seeking to invalidate patent claims must do so by clear and convincing evidence. *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1326 (Fed.Cir.2004). Because anticipation is a question of fact, "[s]ummary judgment is proper if no reasonable jury could find that the patent is not anticipated." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed.Cir.2001). We review the district court's grant of summary judgment of invalidity without deference. *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed.Cir.2004).

As noted above, the district court held that claims 1 and 17 of the '545 patent were invalid on three separate grounds, namely because all elements of the asserted claims were: (1) disclosed in a "printed publication" prior to the critical under section 102(a), (2) disclosed in a "printed publication" more than one year prior to the priority date for the '545 patent under section 102(b), and (3) "known ... by others" prior to the critical date under section 102(a). We hold that none of these grounds supports summary judgment of invalidity.

### I

■ The first two of these grounds for invalidity are easily rejected. The district court found that the Madison drawings constituted a printed publication, and that it was these "drawings ... [that] contain[ed] all of the elements of claims 1 and 17." *Aspex*, slip op. at 15. Concepts points to no evidence establishing that any of the particular drawings contained in Exhibits F and G, and relied upon by the district court in finding the claims invalid under the printed publication provisions of sections 102(a) and (b), were publicly disseminated prior to the critical date. *See In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir.1989); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568 (Fed. Cir.), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988) ("[D]issemination and public accessibility are the keys to the legal determination whether a prior art reference was 'published.'"). Therefore, based on the record before us, it has not been shown that the Madison drawings constitute a printed publication, and there is no basis for the grant of summary judgment based on the printed publication provisions of sections 102(a) and (b).

### II

### A

■ We turn now to the district court's conclusion that claims 1 and 17 were invalid under section 102(a) because the claimed invention was "known ... by others" prior to the critical date. While a single reference is required under the printed publication provisions, the patentee is incorrect in suggesting that anticipation under the "known ... by others" provision of section 102(a) requires a showing that the invalidating invention was disclosed in a single document. The theory under the "known ... by others" provision of section 102(a) is that someone conceived of the invention prior to the patentee's date of invention; that each element of the asserted claims was included in that prior invention; and that this "prior knowledge ... was accessible to the public." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed.Cir.1998). Our decisions have not decided what degree of public accessibility is required, and in view of the posture of this case we need not decide that particular question here.

mary judgment that are subject to the Rule 54(b) certification.

## B

The "known ... by others" provision does not require the anticipating public knowledge to be disclosed in a written document, much less, a single written document. *See, e.g., Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1369 (Fed. Cir.2000), *cert. denied*, 532 U.S. 974, 121 S.Ct. 1607, 149 L.Ed.2d 473 (2001) (stating that an oral presentation "indicative of the state of knowledge and use in this country" could constitute prior art under section 102(a)). Although the patentee's single document theory must be rejected, the approach taken by the district court under the "known ... by others" provision of section 102(a) does not comply with our precedent in a number of respects; each of these requires that the motion for summary judgment be denied.

■ First, the trial court addressed the question of anticipation without having construed the claims. We have held repeatedly that this is an indispensable first step in any invalidity analysis. *See Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1195 n. 4 (Fed.Cir.2003); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1335 (Fed.Cir. 2003); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed.Cir.2000) ("The first step in any invalidity analysis is claim construction...").

On appeal Concepts urges that the trial court implicitly construed the claims when it held that the Madison drawings "contain all of the elements of claims 1 and 17," *Aspex*, slip op. at 15. However, no claim construction order was issued. Nor was there any discussion of the meaning of claims 1 and 17 in the court's opinion

granting summary judgment of invalidity. Consequently, the trial court could not have properly concluded that "all of the elements of claims 1 and 17" were disclosed because the scope of those elements had yet to be determined. The fact that the district court "had at its disposal claim construction holdings from the *E'Lite* case and the *Revolution* case" does not, as Concepts contends, remedy this oversight. (Br. of Appellee at 53.) Those cases construed the '207 patent not the '545 reissue patent asserted here.[6] More importantly, the district court did not address the claim construction rulings in *E'Lite* and *Revolution*, much less suggest that it intended to adopt any of the constructions applied in those cases. The district court therefore erred by not construing the asserted claims prior to granting summary judgment of invalidity.

■ Second, the trial court was required to determine whether and what features of the Madison invention were public. If the prior knowledge of Madison's invention was kept confidential it cannot serve to anticipate the '545 patent. *Cf. Woodland*, 148 F.3d at 1370–71 (explaining that secret use by a third party is not a public use bar under sections 102(a) or (b)).

On summary judgment, there was evidence that some of the disclosures of Madison's invention were in fact confidential. The mere fact that there was no evidence of a written confidentiality agreement associated with the disclosures of Madison's invention to Kimura, Nishioka, and Smith does not necessarily mean that these disclosures were not confidential. Madison testified that when she discussed her invention with others there was an understanding that her designs would be kept

---

6. Claim 1 of the '545 patent originated in the '207 patent. Claim 17 was added during

the reissue proceedings.

confidential. This statement is supported by Smith's testimony that the meeting she had with Madison in 1994 "was confidential. It was verbal confidential." (J.A. at 609.)

In particular, as noted above, the testimony of record does not clearly establish that any of the Madison drawings in Exhibits F and G were disclosed on a non-confidential basis. The district court may not rely on any of the drawings in Exhibits F and G as evidence of what was "known ... by others" under section 102(a), unless it is established that those drawings were in fact disclosed on a non-confidential basis. A similar showing of disclosure on a non-confidential basis must be made with respect to any other drawings offered in addition to those in Exhibits F and G. Thus, any of Madison's drawings that were either: (1) not disclosed or (2) disclosed in confidence, are not relevant to the invalidity analysis.[7]

■ Third, after determining what was disclosed on a non-confidential basis, the district court was required to compare the features disclosed in those meetings with the elements of claims 1 and 17 to determine if there was an anticipation. An anticipation occurs if the prior art "explicitly or inherently discloses every limitation recited in the claims." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1068 (Fed.Cir.2003) (quoting *In re Schreiber*, 128 F.3d 1473, 1478 (Fed.Cir. 1997)). In this particular case, summary judgment could not have been granted without expert testimony clearly explaining how each claim element is disclosed in the Madison invention. *See Schumer v.*

*Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed.Cir.2002) ("Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.") *see also Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1369 (Fed.Cir. 2003); *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed.Cir.2002). This is not one of those rare cases where the invention is so simple that expert testimony is not required. The party asserting invalidity has the burden of introducing such evidence, but here Concepts offered no such expert testimony.[8] The conclusory testimony of Concept's expert, Darata— even if the Madison drawings he relied on were disclosed on a non-confidential basis—is manifestly insufficient. In fact, the only expert testimony of record comparing the Madison invention to the asserted claims in detail is that of Aspex's expert, Chao. Chao testified that in his opinion:

> the Madison drawings d[id] *not* disclose at least the following features of claims 1 and 17:(1) complete primary and auxiliary spectacle frames; (2) projections secured to rear and side portions of the primary frame; (3) magnetic members secured to the rear sides of the extensions; and (4) auxiliary frame arms that extend over upper side portions or the extensions of the primary frame.

(J.A. at 1706 (emphasis added).)

■ Finally, there is a genuine issue of material fact remaining as to whether the Madison invention was enabled prior to

---

7. Testimony that any of the drawings were disclosed on a non-confidential basis must, of course, be sufficiently corroborated. *See, e.g., TypeRight*, 374 F.3d at 1159.

8. Concepts submitted Exhibit P, a chart prepared by its lawyers that compared the Madison drawings with the language of the asserted claims. This lawyer-prepared chart cannot, of course, substitute for testimony of one of skill in the art.

the patentee's date of invention, an issue not addressed by the district court. Aspex's expert, David Chao, stated that in his opinion:

a person of ordinary skill in the art would not be able to construct a complete and operative magnetic clip-on eyeglass device from the Madison drawings.... These drawings are merely rough sketches of bits and pieces of unidentified parts. The drawings do not show complete primary and auxiliary frames, and no written description of the rough sketches is provided that would inform someone skilled in the art what Madison had in mind.

(J.A. at 1706.) Moreover, Nishioka testified that after hearing of Madison's invention he informed her "that her ideas would not be realized" because "[t]he ideas about the optical frame standard that prevailed in those days made [Madison's] invention seem not possible." (J.A. at 714.) Since the Madison invention was not embodied in a prior art patent, cf. Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1355 (Fed.Cir.2003), the burden to show enablement rested on Concepts.

■ Concepts argues that we should ascribe no weight to the Chao testimony because it is uncorroborated, oral testimony. According to the appellee, "[i]t is well established that testimony relating to anticipation from an interested party ... must be corroborated." (Br. of Appellee at 13–14.) Concepts, however, misunderstands our legal requirement for corroboration. There is no corroboration requirement for expert testimony asserted to defend against a finding of invalidity by pointing to deficiencies in the prior art.

See TypeRight, 374 F.3d at 1159 (stating that corroboration is required for testimony that is asserted to invalidate a patent). Although the fact finder after trial may ultimately choose to reject the Chao testimony as conclusory or not credible, there is no separate corroboration requirement to be met for this evidence. On the other hand, Madison's testimony as to her prior, anticipating invention must be corroborated. See id. After all the evidence has been submitted, the trial court will have to determine if the legal standard for corroboration has been met in regard to this testimony. See, e.g., Woodland, 148 F.3d at 1371 (setting forth factors for judging the sufficiency of corroborating evidence). Here on summary judgment, the testimony of Chao and Nishioka, at a minimum, creates a genuine issue of material fact as to enablement.[9]

## CONCLUSION

For the foregoing reasons, the trial court's grant of summary judgment of invalidity is vacated, and we remand this case to that court for further proceedings in accordance with this opinion.

## COSTS

No costs.

---

9. Aspex also argues that because the '269 patent distinguished the '207 patent as prior art, Madison has in effect admitted that her invention does not disclose all of the elements of claims 1 and 17. We disagree. The fact that the invention claimed by the later-filed '269 patent may be patentably distinct from the '207 patent has no bearing on the scope of Madison's 1994 invention unless the '269 patent and Madison's 1994 invention are shown to be the same. That showing has not been made here.