**Eric WASINGER, Plaintiff–Appellant,**

**v.**

**LEVI STRAUSS & CO., Defendant–Appellee.**

**No. 03–1522.**

United States Court of Appeals,
Federal Circuit.

DECIDED: July 8, 2004.

Rehearing and Rehearing En Banc
Denied Aug. 30, 2004.

Before MAYER, Chief Judge,
SCHALL, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Dissenting opinion filed by Circuit Judge DYK.

## DECISION

SCHALL, Circuit Judge.

Plaintiff-appellant Eric Wasinger ("Wasinger") appeals from the decision of the United States District Court for the Western District of Texas granting summary judgment of non-infringement in favor of defendant-appellee Levi Strauss & Co. ("Strauss") in Wasinger's suit against Strauss for infringement of U.S. Patent No. 5,633,510 ("the '510 patent"). Because we conclude that the district court erred in its claim construction, we *vacate* the judgment of non-infringement and *remand* for consideration of the issue of infringement under the correct claim construction.

## DISCUSSION

### I.

Wasinger is the owner of the '510 patent. He also is a co-inventor named on the patent. The '510 patent is directed to a process for simultaneously desizing and

decolorizing a dyed fabric. Desizing and decolorizing are two critical steps in the manufacture of color-faded denim products, such as blue jeans. "Sizing" is a chemical composition that protects yarn as it is woven. Sizing can include different kinds of starch, polyvinyl alcohol, other synthetic compositions, or combinations thereof. Because sizing can be a barrier to wet finishing processes, such as dying and bleaching, it is typically removed as a first step in wet processing. This process is called "desizing." The "decolorizing" process, traditionally accomplished by oxidation or bleaching, results in color fading or partial removal of color from the dyed denim cloth.

Independent claim 1 of the '510 patent is the only claim at issue on appeal:

> 1. A method for simultaneously desizing and decolorizing a dyed fabric or dyed garment having a sizing and a reducible dye which comprises treating said fabric or garment with an effective amount of reducing agent in an aqueous bath whereby the fabric or garment is both desized and decolorized prior to any subsequent oxidation or bleaching.

## II.

Wasinger originally alleged that certain finishing processes used by Strauss literally infringe independent claim 1 and several dependent claims of the '510 patent. Strauss uses the accused processes to decolorize, desize, and abrade denim garments to give them, as fashion dictates, a desired look and feel. The processes range from a "basic rinse finish," costing about $1.25 per pair of jeans to a complex finishing process, costing $65 per pair.

The district court conducted a *Markman* hearing to construe only the single disputed claim term, "desizing." In its summary judgment ruling, however, the court further modified its claim construction, adding an additional limitation to the '510 patent as a whole. In the court's view, "[p]laintiff disclaimed coverage of multi-step processes while prosecuting the '510 patent." As a consequence of this disclaimer, the district court concluded, "the '510 patent is limited to single-step processes and cannot include multi-step processes." Based upon that construction, the court granted summary judgment of non-infringement in favor of Strauss because "in the accused processes desizing and decolorization are carried out in a seriatim, multi-step process."

Wasinger now appeals to us. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## III.

We review a district court's decision to grant summary judgment *de novo*. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed.Cir.1995). Summary judgment is appropriate where the record indicates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The determination of infringement is a two-step process. First, the court construes the claims at issue to correctly determine their scope. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir. 1998) (en banc). Claim construction is an issue of law which this court reviews *de novo*. *Id.* The second step in an infringement analysis is applying the correctly construed claims to the accused method; this is a factual determination. *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1348–49 (Fed.Cir.2000).

On appeal, Wasinger challenges the district court's conclusion that multi-step processes were disclaimed during prosecution

of the '510 patent. Wasinger asserts that the district court's construction adds an entirely new limitation that is unsupported by the actual claim language. Additionally, Wasinger argues that the district court misinterpreted the prosecution history and that, when viewed in context, there was no disavowal of multi-step processes. For its part, Strauss contends that the district court properly relied on intrinsic evidence to conclude that Wasinger disclaimed multi-step processes. According to Strauss, Wasinger's statements in the file history unambiguously limit the claims to a single operation process.

Claim 1 recites "a method for simultaneously desizing and decolorizing a dyed fabric ... which comprises treating said fabric or garment with an effective amount of reducing agent in an aqueous bath ...." '510 patent, col. 6, ll. 1–5. The claim concludes with a "whereby clause," which requires the fabric to be "both desized and decolorized prior to any subsequent oxidation or bleaching." *Id.* col. 6, ll. 5–7. Use of the open-ended transition "which comprises" indicates that there may be additional unclaimed steps in the method. *Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1305 (Fed.Cir. 2004) ("The use of the transitional phrase 'comprising' ... indicates that the elements or steps following the transition may be supplemented by additional elements or steps and still fall within the scope of the claim."). The whereby clause signifies that there may be subsequent oxidation or bleaching steps that are not part of the claimed method. Therefore, on its face, claim 1 clearly contemplates the claimed method being performed as part of a multi-step finishing process.

The specification confirms that Wasinger contemplated multi-step processes. For example, after describing a preferred operation of the claimed method, the specification states "[t]he garments or fabrics can then be further processed if desired." '510 patent, col. 3, ll. 63–64. Similarly, the examples at the end of the written description also indicate that the inventor contemplated multi-step processes. The first example, after describing a particular washing sequence, teaches that "[i]f an even lighter color is desired the process can be repeated for 10 minutes prior to rinsing since concurrent desizing is not necessary. The garments can be further decolorized by subjecting them to a standard bleaching operation or by treatment with ozone." *Id.* col. 4, l. 67—col. 5, l. 5. In the third example, denim jeans that have already been enzymatically desized are subjected to the method of the claimed invention. *Id.* col. 5, ll. 22–25. The specification thus explicitly teaches that the claimed method may be performed as one step in a multi-step finishing process.

Neither do we find support for the single-step limitation in the prosecution history. The district court relied heavily on the prosecution history to support its single-step process limitation, stating that "[p]laintiff disclaimed coverage of multi-step processes while prosecuting the '510 patent." The '510 patent prosecution history consists of a reply to a first office action rejecting the claims and a reply after final rejection. Claim 1 is reproduced below, indicating the amendments made during prosecution:

> 1. A method for simultaneously desizing and decolorizing a *dyed* fabric or *dyed* garment having a sizing and a reducible [coloring agent] *dye* which comprises treating said fabric or garment with an effective amount of reducing agent *in an aqueous bath* whereby the fabric or garment is both desized and decolorized *prior to any subsequent oxidation or bleaching.*

Wasinger had to overcome an obviousness rejection based primarily on U.S. Patent No. 5,199,957 to Pascoe ("Pascoe"). According to the examiner, "the method of removing sizing and dye from textiles by using a reducing agent is well known as shown by Pascoe." In his reply to the first office action rejection, Wasinger disputed the examiner's characterization of Pascoe, asserting that the dyed fabric in Pascoe is not treated with a reducing agent, and that "Pascoe operates at a high temperature and still requires the use of an oxidizing wash." To further distinguish Pascoe, Wasinger argued that "applicants operate at a different time and place of the treatment process," pointing out that "the usual practice for the garment processors . . . is to enzymatically desize the garments and then decolorize or fade the dye with a bleaching agent."

Wasinger then described certain advantages of the claimed invention, such as allowing elimination of enzymatic removal of sizing and "providing a single operation for both desizing and color fading." After addressing other references besides Pascoe, Wasinger summed up his position by stating, "[T]he cited references all relate to the use of oxidizing agents and not reducing agents. None of the references teach simultaneously desizing and reducing the dye on the fabric." As part of this first response, Wasinger added the *"dyed"* limitations to the fabric and garment of claim 1; replaced the term "[coloring agent]" with *"dye;"* and added the *"in an aqueous bath"* limitation.

The second office action was made by a different examiner, who essentially repeated the arguments made by the examiner in the first office action. The second examiner summarized Wasinger's position with respect to how the claimed invention overcame prior art problems, and with respect to how one of the asserted advantages of the invention was "consolidation of [a] multiple stage process into fewer stages." The second examiner found, however, that "the claims herein still permit oxidation to be a part of the process." The second examiner concluded that "[i]t appears that there is indeed patentable subject matter in the application since the use of the reducing agents without oxidation agent follow-up shows some advantages and an advance in the state of the art. If the claims were amended to exclude the possibility of oxidation as part of the process claimed, the claims would be looked upon favorably." This second office action rejection was made final.

In Wasinger's response after final rejection, he amended claim 1 by adding the *"prior to any subsequent oxidation or bleaching"* limitation. Wasinger thereby incorporated the second examiner's suggestion to "exclude the possibility of oxidation as part of the process claimed." Wasinger then emphasized again that "[t]he invention relates to the discovery that reducing agents can be utilized in lieu of oxidizing agents to discolorize dyed fabrics [and] garments so as to provide a fashion faded effect that is generally performed with harsh oxidizing agents." Wasinger again explained the advantages of the claimed invention and stated that "[i]t is surprising that a reducing agent, which is the complete opposite to an oxidizing agent, can provide the same effects plus other benefits." Wasinger also stated that "none of the references teach simultaneously desizing and reducing the dye of the fabric." Wasinger received a Notice of Allowability as a result of the reply after final rejection.

A fair reading of the prosecution history indicates that Wasinger disclaimed oxidization and bleaching—traditional decolorizing methods—as part of the claimed method for simultaneously desizing and

decolorizing dyed fabrics. This is clear from the prosecution history and is supported by the language of the amendment made to claim 1. However, Wasinger did not disclaim or give up a multi-step process wherein the claimed method is but one step, of many, in what may be a complicated finishing process. What Wasinger gave up was oxidation as part of that one step. A potential infringer should not be able to perform the claimed method, yet avoid infringement merely by adding subsequent steps that further decolorize or desize the garments using traditional means such as bleaching, oxidation or mechanical steps. Wasinger's description of the advantages of the claimed method during prosecution—e.g., the ability to eliminate the use of harsh oxidizing agents—does not amount to a disclaimer of multi-step processes that do not take advantage of the advantages or benefits of the invention.

In sum, we conclude that the district court's single-step process limitation is unsupported by the claim language and the written description, and we see no disclaimer of multi-step processes in the prosecution history. Because the district court's entry of summary judgment of noninfringement was premised upon an incorrect construction of the '510 patent, the order granting summary judgment is vacated. The case is remanded to the district court for proceedings with respect to infringement based upon a claim construction that does not include the limitation of a single step process. *See Scanner*, 365 F.3d at 1306.

DYK, Circuit Judge, dissenting.

The majority holds that claim 1 is limited only to the ordinary and customary meaning of "[a] method for simultaneously desizing and decolorizing a dyed fabric or dyed garment ... prior to any subsequent oxidation or bleaching," U.S. Patent No. 5,366,510 (the " '510 patent"), col. 6, ll. 1–7, and that Wasinger did not disclaim a multi-step process including a subsequent oxidation step, despite the prosecution history to the contrary. Maj. Op., *ante* at 37–38. Because I think that the applicants' statements in the prosecution history, coupled with those of the examiner, rise to the level of a clear disclaimer of a process including a subsequent oxidation step, I respectfully dissent.

### I

"Generally speaking, we indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed.Cir.2002) (quoting *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed.Cir.1999)). However, "a claim term will not carry its ordinary meaning if the intrinsic evidence shows that the patentee ... expressly disclaimed subject matter." *Id.* at 1366–67. "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). While I think that the district court went too far in holding that the applicants "disclaimed coverage of [all] multi-step processes while prosecuting the '510 patent," *Wasinger v. Levi Strauss & Co.*, No. 01–CA–1056–EP, slip op. at 9 (W.D.Tex. Mar. 31, 2003), I agree with the core of the district court's holding that there was a disclaimer in the prosecution history of multi-step processes involving subsequent oxidation steps.

### A

During the prosecution of the '510 patent, the examiner first rejected all of the

applicants' claims as obvious over U.S. Patent No. 5,199,957 to William M. Pascoe ("Pascoe"), in view of a dictionary and U.S. Patent Nos. 5,171,332, 5,118,322, and 4,231,890. The examiner found the claimed process to be obvious because, as claimed, "the technique may include a subsequent oxidizing agent treatment." (J.A. at 58.) In response, the applicants argued that, in the claimed process, "harsh oxidizing agents which degraded the fabric were not utilized," and they distinguished Pascoe, stating that "Pascoe ... still requires the use of an oxidizing wash." (J.A. at 62.) The examiner then finalized the rejection, repeating that "the [claimed] technique may include a subsequent oxidizing agent treatment," and noting that the claims as amended "still permit oxidation to be a part of the process." (J.A. at 67, 69.) However, the examiner stated:

> It appears that there is indeed patentable subject matter in the application since the use of the reducing agents *without oxidizing agent follow-up* shows some advantages and an advance in the state of the art. *If the claims were amended to exclude the possibility of oxidation as part of the process claimed, the claims would be looked upon favorably.*

(J.A. at 69 (emphases added).)

In response to the final rejection, the applicants made several amendments that they stated were "as per the Examiner's suggestion." (J.A. at 72.) First, the applicants amended claims 1, 13, and 17 by adding the phrase "prior to any subsequent oxidation or bleaching." (J.A. at 71–72.) The applicants stated that "[t]his limitation specifically excludes the oxidation process from the claims and distinguishes the invention at issue from the cited refer-

ences." (J.A. at 72.) Second, the applicants cancelled claims 9–11. Claim 9 claimed exactly what Wasinger now asserts (and what the majority now holds) that claim 1 encompasses: "The method of claim 1 wherein said fabric or garment is subsequently treated with an oxidizing agent." (J.A. at 54.)[1] The applicants stated that they "cancelled claims 9–11 because they spoke to the specific use of an oxidizing agent which the Examiner determined would read on the prior art." (J.A. at 72.) The applicants also stated: "The amended claims specifically *exclude the use of any oxidizing agents.* This limitation puts the claims in condition for allowance." (J.A. at 73 (emphasis added).) The examiner found the application, as amended, to be allowable.

Based on this history, I would hold that Wasinger disclaimed a process involving a subsequent oxidation step.

## B

The majority may suggest that the disclaimer in the prosecution history is ineffective because it is not clear and unambiguous in light of the "prior to" language of claim 1, which, standing alone, seems to contemplate the use of "subsequent oxidation" steps. However, the disclaimer plainly overcomes this language in claim 1. Moreover, it appears that the applicants acted as their own lexicographers in using the "prior to" language. A "claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history." *CCS Fitness*, 288 F.3d at 1366; *see also, e.g., Golight, Inc. v. Wal–Mart Stores, Inc.*, 355 F.3d

---

1. Claim 10 claimed: "The method of claim 9 wherein said oxidizing agent comprises ozone." (J.A. at 54–55.) Claim 11 claimed: "The method of claim 9 wherein said oxidizing agent comprises a chlorine bleach." (J.A. at 55.)

1327, 1332 (Fed.Cir.2004). In this case, the examiner clearly required that the claims "exclude the possibility of oxidation as part of the process claimed" and that the process be performed "without oxidizing agent follow-up." (J.A. at 69.) In response to the examiner, the applicants amended the claims and asserted that the amendments were made "as per the Examiner's suggestion," representing that the added claim language was crafted to satisfy the limitations imposed by the examiner. (J.A. at 72.) The applicants thus appear to have acted as their own lexicographers, defining the added language to "exclude the possibility of oxidation as part of the process claimed." (J.A. at 69.) To hold otherwise is to give apparent sanction to an effort to mislead the Patent and Trademark Office by pretending that added claim language cures an examiner's rejection when, in fact, it was designed to have the very opposite effect. *See Pall Corp. v. PTI Techs. Inc.*, 259 F.3d 1383, 1393 (Fed.Cir.2001), *vacated on other grounds*, 535 U.S. 1109, 122 S.Ct. 2324, 153 L.Ed.2d 152 (2002) ("The public notice function of patents requires that a patentee be prevented from expressly stating during prosecution that the claims do not cover a particular device and then later suing for infringement by that same device.").

## II

The majority properly does not address the validity of its broad claim construction. During prosecution, the examiner stated that only "the use of the reducing agents without oxidizing agent follow-up" was non-obvious over Pascoe in view of the other cited references, and he rejected as obvious claims that encompassed subsequent oxidation steps. (J.A. at 69.) While neither I nor the majority expresses a view with respect to whether the examiner was correct, I note that, on remand, the

district court must consider whether claim 1 as construed is invalid because it is obvious. *See* 35 U.S.C. § 103 (2000).